Thank you. May it please the court, I'm Steve Fiewiger. I represent Linda Robertson in this appeal. Ms. Robertson was a long-time federal employee at the Army Institution at the Rock and believed that she was a subject of race discrimination and retaliation with respect to a three-day suspension that she received in September 2016 and with respect to a denial of a promotion to a GS-11 sexual assault response coordinator position when that position became an incumbent, Shirley Nottingham. Ms. Robertson Mr. Fiewiger, did your client ever apply for a promotion or that promotion? Mr. Fiewiger I believe so by submitting her resume as directed by the colonel and the by contacting the Civilian Personnel Advisory Center and requesting that that go forward. The evidence shows that she did not do that and did so, failed to do so in February 2016, less than a month after she was interviewed concerning charges of discrimination made by my client by the Army EEO at Rock Island Arsenal. Ms. Robertson So the position was never actually posted? Mr. Fiewiger It was never posted, no, Your Honor. Ms. Robertson How can your client then have suffered any kind of material adverse job action if the position was never posted and she never formally applied? Mr. Fiewiger I'm sorry, the record shows she was actually assigned to the position. If you look at Exhibit 3 to the Motion for Summary Judgment, which is page 20 of File 15-1, it shows that she's listed as a SARC, S-A-R-C, but yet is not being compensated at a GS-11 rate. So it's our position that they failed to provide her with the benefit after assigning her to entitled to that position. With respect to the three-day suspension, Ms. Sievert assigned my client a duty to create training materials for a group and my client did not do that. And so she was determined by Ms. Sievert to be insubordinate and referred for discipline and was ultimately given a three-day suspension for failing to perform the task. The problem is that the record shows that that's not the duties of a victim advocate or a SARC. There is record here that Jacqueline Watkins, Greg Buehler, and Carolyn Hurst all told Ms. Sievert that that is not her duties, that all training and materials for training were to be created and come out of Fort Riley, Kansas. Despite being told this, Ms. Sievert insisted that my client create these materials, which is not within the scope of her duties. And when the facts are viewed in a light most favorable to Ms. Robertson on this issue, it's clear that this constitutes retaliation. It also doesn't show that she refused to comply with orders. While she refused to comply with an order that was beyond the scope of her duties, Your Honor, is that what she told them? Yes. In other words, she said I shouldn't do this because it's beyond the scope of my duties. Correct. She said it's outside of my lane to Ms. Sievert. That's in the record. And that was something that Mr. Clay, the decision maker, said showed her insubordination. With respect to the race discrimination issue on that, Ms. Watkins provided testimony in the record that it was clear from her observations day to day that Linda was being treated differently by Teresa Sievert because of her race, and that Sievert would monitor Linda's comings and goings when other white employees were able to take breaks at any time. And the Army argues that this does not constitute race discrimination because she failed to follow the duty or follow the order given by Sievert, but my client provided evidence to Sievert to show that that was outside the scope of her authority as a victim. Mr. Sievert, you have one minute remaining. Okay. Thank you. As to the failure to promote also, we have the evidence that in July 2015, Sievert told both Nottingham and my client that she would never be promoted to a GS-11 SART position. Then my client, in December 2015, files a charge of discrimination against her for other activities, and the SART position becomes open, and yet Sievert refuses to open the gate to allow my client to fill the role then. Mr. Feweger, your time has expired. If you wish to retain two minutes in rebuttal, I suggest that you do so. Okay. I appreciate that, and I do. Okay. Thank you. Mr. Holzer? Thank you, and may it please the Court. Mr. Feweger, my name is John Holzer, and I'm here on behalf of the Secretary of the Army. When we strip away the factual arguments that Appellant Linda Robertson failed to raise below, there is almost nothing left to support her appeal. And even if Appellant's arguments had not been waived, they would lack merit. The District Court's judgment should therefore be affirmed. First and foremost, the District Court applied the correct standard at the summary judgment stage by asking whether a reasonable jury could find, based on all the evidence, that a discriminatory or retaliatory motive caused the adverse event. Here, in this case, those adverse events being the suspension and the non-selection for the job detail. And this overriding question begs the question, what pieces of evidence, according to Ms. Robertson, point to an illicit motive? And in considering that question, the Court should not consider facts and arguments that were not raised by Ms. Robertson in her summary judgment reply, as those arguments are now waived. Fundamentally, Robertson's core argument is twofold. First, that the basis for her suspension in subordination was a lie because she properly refused to do an assignment that wasn't, quote, in her lane, end quote. And second, she says that the failure to select her for this 120-day detail was retaliation, as shown by suspicious timing between her protected activity and her non-selection. So, turning first to Appellant's argument that the three-day suspension was pretext for racial discrimination. The law in pretext is fairly straightforward. Pretext means a lie, a phony reason for some adverse action. And the burden is on Ms. Robertson to offer evidence that the non-discriminatory reason provided by Daryl Clay, the suspension decision-maker, was a lie intended to mask unlawful discrimination. And the question for the court here is not whether Daryl Clay was right or wrong or whether the court agrees or disagrees with his decision, but simply whether or not his basis for suspending Ms. Robertson was honestly believed. And here, that inquiry is fairly straightforward in that the evidence is undisputed that Ms. Robertson disobeyed orders from her supervisor, Teresa Siebert, to prepare the training packages. In fact, I wrote down what Counsel just said in his argument. He said, quote, my client did not do that, end quote. His client did not obey the order that her supervisor had given her. Thus, the fundamental basis for the suspension in subordination is not disputed. So Appellant argues that, indeed, there was evidence that Daryl Clay did not honestly believe that she had been insubordinate. And she says that the evidence is that she met with Daryl Clay on a few occasions or emailed him on a couple of occasions saying that she had consulted with other persons within the Army outside of her chain of command who had told her that victim advocates are not responsible for creating training packages. The problem is that she's raising that argument for the first time in this appeal. In her summary judgment response, there is no mention of any meetings with Daryl Clay or any communications with Daryl Clay. Moreover, the feedback that she received from other persons within the Army would not have changed the analysis as to whether or not Daryl Clay honestly believed that Robertson had been insubordinate. Indeed, Robertson's arguments about whether or not it was within her job description to prepare these training packages merely challenges the wisdom of the assignment itself. But the propriety or the benefits to Ms. Robertson of completing this assignment is not something for federal courts to determine. Federal courts are not super personnel departments that will substitute their judgments for those of businesses or employers as to whether or not the assignment is appropriate. And in this case, there really is no dispute by Ms. Robertson that she would have benefited for completing the assignment or that she was capable of completing the assignment. In fact, she did complete the assignment later on in October of 2016. Counselor Renning? This was a 120-day vacancy, wasn't it? That's correct, and that relates to Ms. Robertson's retaliation claim. So there was an employee, Shirley Nottingham, who went on military leave, and the Army considered creating a 120-day job detail for Ms. Nottingham's position. That's correct. And that leads into Ms. Robertson's retaliation claim. So to prevail on her retaliation claim, Ms. Robertson must show that she engaged in a protected activity, that she suffered an adverse employment action, and that there's a connection between the two. And as Judge Sykes noted in Appellant's argument, Ms. Robertson cannot actually show an adverse employment decision with respect to this 120-day job detail because there never was the position for Ms. Robertson to apply for it. The position never came out. There was no job posting. Nobody was selected for this job detail because it did not exist. So at the end of the day, as far as her claim regarding this job detail, she cannot show that she suffered an adverse employment event. Turning just briefly to her arguments that her suspension was also retaliatory, Ms. Robertson attempts to base that argument on suspicious timing, and she says that the court erred in finding that Ms. Sieber's proposal to suspend her, which occurred in July of 2016, was too remote from Ms. Robertson's formal EEO complaint filed five months earlier. And instead, she argues that what the court should have found was that Robertson's protected activity was her complaint to Daryl Clay in May and July of 2016, which were closer in time to Sieber's proposal to suspend her. And like many of the arguments that have been presented here today by appellant, that argument was not raised in her summary judgment response and is therefore waived. It also lacks merit in that suspicious timing by itself is rarely an inference of retaliation, but the court may consider it to be a factor when the adverse employment action follows on the close heels of protected activity. And here, Robertson does not dispute that the July 2016 proposal to suspend was the adverse employment action for purposes of this retaliation claim, but instead she's disputing what the protected activity was that triggered the alleged retaliation. She's saying that it was her communications with Daryl Clay, but in her complaint, she said that the protected activity was her EEO action, which she filed in 2016, long before the meetings with Clay that she's now raising before the court. Moreover, her complaints to Daryl Clay about the assignment would not have been the sort of protected activity that would have given rise to a retaliation claim. So, if there are no further questions from the court, in conclusion, I respectfully submit that the judgment of the district court should be affirmed. Thank you very much. Thank you. You have two minutes in rebuttal. Your Honor, I don't have any further arguments to make. All right. Thank you very much. Our thanks to both counsels. The case is taken under advisement.